## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

---

SHERYL PALONI,

        Plaintiff,

v.                                                                 No. CIV 03-513 BB/ACT

CITY OF ALBUQUERQUE POLICE DEPARTMENT,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of two motions for summary judgment filed by Defendant (Docs. 69, 73), as well as Defendant's motion to strike an affidavit (Doc. 86). The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the Court finds that Defendant's motion for summary judgment directed at Plaintiff's federal claims will be granted in part and denied in part; the motion for summary judgment concerning Plaintiff's state-law claims will be granted; and the motion to strike the affidavit will be denied, although only the relevant and admissible portions of that affidavit will be considered by the Court.

This case arises out of Plaintiff's former employment as a police officer with the Albuquerque Police Department ("Defendant"). In November 2001, Plaintiff was involved in an incident involving a bank robber, a number of other police officers, a vehicle chase, and eventually the killing of the bank robber by a different officer. During the first part of the incident Plaintiff and another female officer ("Mashburn") fired shots at the tires of the robber's vehicle, using their handguns. Subsequently a male officer ("Montano") also shot at the tires of the vehicle with his handgun. At the time, Defendant had in effect a standing operating procedure ("SOP") which stated that an officer should not use a handgun to shoot at the tires of a vehicle, but should instead use a rifle or a shotgun.

Plaintiff and the other two officers were therefore in violation of the literal terms of this SOP. As discussed below, there is evidence that a number of other male officers also committed violations of various other SOPs during the incident involving the bank robber.

An Internal Affairs investigation following the shooting focused only on the conduct of the four officers who fired shots during the incident--Plaintiff, the other two officers who shot at the bank robber's tires, and the officer who shot and killed the robber. The investigation resulted in findings that may be summarized as follows: (1) Plaintiff and Mashburn were found to be in violation of the firing-at-tires SOP, because they violated its requirements without sufficient justification; (2) Montano was not found in violation of the SOP, because he had sufficient justification to shoot at the tires, even with his handgun; and (3) the investigator recommended that Plaintiff and Mashburn attend retraining at the Police Academy regarding the SOP and the use of deadly force. This recommendation was adopted by at least two of Plaintiff's supervisors, although at some point there was some discussion of the possibility that Plaintiff and Mashburn might be suspended for five days. Plaintiff, unhappy with the result of the investigation and unable to obtain relief from the Chief of Police, submitted a letter of retirement on September 4, 2002, maintaining that she and Mashburn were being treated in a discriminatory manner. The next day the Chief wrote memoranda to Plaintiff, Mashburn, and Montano, exonerating all three of them from the charge of being in violation of the SOP, but requiring all three of them to attend a training session "to cover the SOP and other matters as determined by the Director of Training." Plaintiff did not rescind her retirement and has not gone back to work for Defendant, or anyone else. After exhausting her administrative remedies, she filed this lawsuit making the following claims, as the parties have construed the complaint: (1) constructive discharge, both as an independent state-law claim and as part of her Title VII claim; (2) a § 1983 claim for retaliation under the First Amendment; (3) violation of Title VII, 42 U.S.C. §§

2000e *et seq.*; and (4) retaliation, both as an independent state-law claim and as part of the Title VII claim. Defendant has moved for summary judgment on all claims, in two separate motions.[1]

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.* The Court will analyze the motions for summary judgment under this standard.

**Title VII Claim:** Plaintiff contends she suffered disparate treatment when she and Mashburn were disciplined but the male officers were not. She also contends Defendant retaliated against her after she spoke up about the disparate treatment and made her complaints known to the media and to high-ranking officials, including the mayor and the chief of police. To make a prima facie showing of disparate treatment, Plaintiff was required to present evidence establishing that she is a member of a protected class; she suffered an adverse employment action; and similarly situated employees were treated differently than she was treated. *Trujillo v. University of Colorado*, 157 F.3d 1211,

---

[1]This practice of filing separate motions directed at separate claims of a complaint is unacceptable, and attorneys representing Defendant have been admonished for this practice in previous cases. *See, e.g., Smith v. City of Albuquerque*, CIV 01-416 BB/LFG. Since Defendant's current counsel was not involved in that case or other cases in which a similar practice was followed, the Court will not impose sanctions. However, in the future one motion should be filed in each case, addressing every count of the complaint Defendant wishes to attack.

1215 (10th Cir. 1998). To survive summary judgment on the retaliation claim, Plaintiff had to present evidence showing that she engaged in protected opposition to discrimination; she was subjected to an adverse employment action subsequent to or contemporaneous with her protected opposition; and there is a causal connection between the adverse employment action and the protected conduct. *Id.* Both of these claims, therefore, depend on the existence of an adverse employment action; without such an action, the discipline[2] imposed by Defendant on Plaintiff is not actionable under Title VII.

To be considered an adverse employment action, an act of discrimination by an employer must constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The Tenth Circuit defines an adverse employment action liberally, and does not limit such actions to monetary losses in the form of wages and benefits. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003). However, actions presenting nothing beyond a mere inconvenience or alteration of responsibilities do not constitute an adverse employment action. *Id.* The facts of each situation must be examined to determine whether the employer's conduct rises to the level of an actionable adverse employment action. *Id.*

The Tenth Circuit has determined that the following types of discipline constitute an adverse employment action, even in the absence of any impact on the employee's pay or benefits: (1) a transfer from a position in which the employee provided skilled technical assistance to a position in which the employee wrapped meat, *id.*; (2) a transfer from a project-engineer or assistant-project-

---

[2]The Court recognizes there is a dispute between the parties as to whether retraining can be considered discipline at all. However, there is conflicting evidence in the record on this issue; at least two supervising officers testified that a retraining requirement is a negative thing, and should be considered discipline. Due to the resolution of the adverse-employment-action issue, the Court need not decide whether a requirement of retraining is discipline or not; the real issue in this case is whether it should be considered an adverse employment action, even if it does not officially qualify as discipline.

4

engineer position to a position requiring the employee to stand on a corner and count cars, *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1215 (10th Cir. 2003); and (3) institution of criminal charges against the employee, with the concomitant harm to the employee's future job prospects, *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). On the other hand, the following types of conduct have been found not to qualify as an adverse employment action: (1) a routine, lateral transfer from a project-engineer position on a small project to an assistant-project-engineer position on a much larger, more complicated project, *Wells*; (2) moving the employee's desk, monitoring her phone calls, and having everyone in the office act "chilly" toward her, *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 857 (10th Cir. 2000); and (3) a lateral transfer from one school to another, even though the new school required a much longer commute, *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998). The Tenth Circuit, therefore, in keeping with the Supreme Court's pronouncement in *Ellerth*, has required the employer's conduct to result in a significant change in employment status or a significant impact on future employment possibilities, either with the same employer or a different employer. The Court must review the claimed adverse employment action in this case with that "significant change" standard in mind.

The claimed adverse action in this case is actually a series of actions, due to the different levels present in Defendant's hierarchy. The first instance of alleged adverse action was the internal affairs ("IA") investigation that resulted in a finding that Plaintiff and Mashburn had violated the tire-shooting SOP and that their firearm discharges be considered unjustified, while Montano's would be considered justified. The IA investigator recommended that Plaintiff be disciplined with "retraining" [Exh. I, MSJ]. This recommendation was followed by Captain Leeper, a captain in Plaintiff's direct chain of command, who also recommended that Plaintiff report to the Police Academy to be "retrained on the use of deadly force." [*Id.*, supervisor recommendation form contained in IA report, dated May 7, 2002] Deputy Chief Ray Schultz also concurred in this recommendation, and a "final

5

disposition" was contained in the IA file, dated June 25, 2002, sustaining the SOP violation and imposing discipline of "Retraining at APD Academy" [*Id.*, last page].[3]  In sum, the claimed adverse employment action consists of the ultimate determination that Plaintiff's violation of the SOP was not justified, and that she would need to undergo retraining on the use of deadly force.

Finding that an employee has committed a violation of the rules, and requiring that employee to undergo retraining concerning those rules, simply does not constitute a significant change in employment status.  Plaintiff retained all of her pay and benefits, was not transferred to a position of less responsibility, and was not forced to perform menial tasks.  Instead, she was required to temporarily attend a retraining session of uncertain duration.  There is no evidence that attending the retraining would have cost Plaintiff any overtime or had any tangible impact on her employment. There is also no evidence that the finding of an SOP violation, in conjunction with the retraining requirement, would have any effect on Plaintiff's future opportunities for promotion.

The Court has been unable to find any case in which a single instance of retraining, standing alone, has been held to be an adverse employment action.  In fact, the law is to the contrary.  *See, e.g., Seely v. Runyon*, 1998 WL 863974 (10th Cir. unpublished) (temporary assignment to 90-day retraining program, during which rate of pay, title, and benefits remained same, was not adverse employment action), *affirming* 966 F.Supp. 1060 (D.C.Utah 1997) (same); *Pritchett v. Western Resources, Inc.*, 313 F.Supp.2d 1120, 1132 (D. Kan. 2004) (required participation in retraining program did not constitute adverse employment action); *Munoz v. Western Resources Inc.*, 225

---

[3]This disposition was later changed by Chief Gallegos, who decided to exonerate Plaintiff of the SOP violation, find the shooting justified, but still require her to attend a training session covering the SOP and possibly other matters [Exh. 3 to Exh. A, MSJ].  The Chief's action took place after Plaintiff had already submitted her letter of resignation, and there is some factual conflict as to whether the IA "final disposition" should be considered the final action in this case.  Viewing the situation in the light most favorable to Plaintiff, the Court will consider the more serious discipline (a finding that the shooting was not justified, as well as retraining) to be the final action by Defendant in this case.

6

F.Supp.2d 1265, 1270 (D. Kan. 2002) (poor evaluation of employee resulting in retraining, but no loss of benefits or adverse effect on future employment, was not adverse employment action). Only where the retraining has been accompanied by other actions by the employer, or has caused a material impact on the employee's pay, benefits, or future employment, has an adverse employment action been found to exist. *See Kim v. Nash Finch*, 123 F.3d 1046, 1060 (8th Cir. 2000) (reduction of duties, negative personnel reports, other disciplinary action, as well as required remedial training, constituted adverse employment action); *Bishop v. Bell Atlantic Corp.*, 2001 WL 40910 (D. Maine unpublished) (where retraining affected employee's productivity and interfered with his opportunities to earn overtime, it was an adverse employment action).

     Plaintiff makes several arguments in an effort to raise an issue of fact as to the existence of an adverse employment action in this case. First, Plaintiff argues that this case "presents factors unique to the dynamics of police departments or similar entities where officers rely to an extraordinary degree on their self-confidence and the confidence of their fellow officers in performing their jobs." According to Plaintiff, the finding that her act of shooting at the tire was not justified, and that she needed to be retrained, severely harmed her confidence. However, whether a disciplinary action by an employer rises to the level of an adverse employment action is measured by an objective standard, rather than the employee's subjective reaction to the discipline. *See Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 23 (1st Cir.2002); *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir.2000); *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir.1998). "[T]he loss of prestige or self-esteem felt by an employee who receives what he believes to be an unwarranted job criticism or performance review will rarely--without more--establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause." *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1242 (11th Cir. 2001). Plaintiff argues that this case is different because she was a police officer, and her confidence was damaged in an area crucial to police officers--the ability to

make a split-second decision to fire her weapon or not to fire it. Using an objective standard, however, the Court cannot find that these facts make a difference in the result. This case involves one instance of a police department criticizing an officer over the officer's use of force, but not imposing any discipline greater than retraining as a result. Where the perceived violation of the rules lacks severity, such that nothing more than retraining is deemed required by the employer, no adverse employment action can be found under an objective standard.[4] In other words, where the employer has decided that no greater discipline than retraining is required, which means the violation of the deadly-force SOP is not considered overly serious, a reasonable officer would not be so affected that the impact could be considered a significant alteration of the officer's employment status.[5]

Plaintiff also argues that the unjustified IA finding, and the retraining requirement imposed as a result, caused her fellow officers to lose confidence in her abilities and made her working conditions less safe as a result. The problem with this argument is that Plaintiff has submitted no admissible evidence in support of it. The only evidence the Court could locate in the record, related to the "trust" issue, is as follows: (1) Plaintiff's former supervisor, William Moe, testified in his

---

[4]The Court recognizes that the impact on Plaintiff's confidence is regrettable, especially since for purposes of this opinion the Court must assume the discipline imposed was purely a result of discrimination. However, the existence of an adverse employment action cannot depend on the subjective impact of the action on the employee's confidence or self-esteem, even if the employee is a police officer. Instead, under the objective standard, the Court must examine such things as the frequency of the unjustified criticisms of job performance (here, there was one); the level of discipline imposed as a result (here, only retraining, with no loss of pay, benefits, or job title); and the impact of the criticism on the employee's future advancement potential (here, there is no evidence of any impact).

[5]The Court recognizes that a finding that an officer was not justified in firing a weapon is clearly a negative, and will be considered a negative by any officer. However, where the finding is "softened" by the fact that no discipline more serious than retraining is imposed, it simply cannot rise to the level of an adverse employment action. Although Plaintiff emphasizes Sergeant Moe's characterization of the finding as "poison," it is clear that Moe was talking about the subjective impact on Plaintiff's confidence, rather than stating that a similar finding should always be considered "poison" for any officer [Exh. A, Mot. to strike affid.].

deposition that the adverse findings against Plaintiff would be "potentially, very damaging. You know, to answer that you have to speculate a little bit. The *potential* is to incur tremendous damage..." (emphasis added)  [Exh. B, Mot. to strike Moe affid., p. 48]; (2)  Ron Brown, a fellow officer, heard criticism of Plaintiff's and Mashburn's actions, from unidentified officers at the gym [Exh. 12, Resp. to MSJ, pp. 18-19]; (3) Plaintiff testified that, as a result of her complaints about the women being disciplined while the men were not, she was seen as a "troublemaker" by everyone in the "ROP" unit, and she did not trust the officers in that unit; although she never heard anyone in the ROP unit make any comment to her, except Montano saying "Well, there's Sheryl Paloni" at the mall, the members of that unit gave her condescending looks; however, everyone in her squad was "great" [Exh. 1, Resp. to MSJ, pp. 227-28, 253-55]; and (4) Moe averred in his affidavit that after other officers became aware about Plaintiff's complaints of unequal treatment, she was seen as a troublemaker trying to get male officers in trouble, and there were complaints about her "bitching" about her treatment [Exh. A, Mot. to strike Moe affid.].  Plaintiff's evidence, therefore, consists of hearsay testimony about generalized statements made by unidentified officers at unspecified times, as well as Moe's discussion about the potential harm to other officers' confidence in Plaintiff, and Plaintiff's subjective feelings about the way the ROP unit was acting toward her.  Furthermore, her own testimony shows that the officers she worked most closely with, the members of her squad, were supportive of her.  This evidence is simply insufficient, even viewed in the light most favorable to Plaintiff, to raise an issue of fact as to whether a significant number of other officers, particularly those she might have to work with on a regular basis, actually distrusted her abilities following the adverse disciplinary findings as well as her complaints about her treatment.  Again, there is not enough evidence here to allow a finding of a significant change in Plaintiff's employment status.  *Cf. Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (police officer's claim she was

9

subjected to unsubstantiated reprimands and derogatory comments subsequent to filing harassment complaint, did not constitute adverse employment action).

Plaintiff also contends the following situation constitutes an adverse employment action: she was found to be in need of retraining on the use of deadly force, but was not offered such retraining. It is not disputed that Plaintiff was never given a specific time to attend retraining, and that she never requested such a time. Plaintiff argues that this situation, which required her to be out in the field knowing that she needed retraining on when to use deadly force, was intolerable and therefore constituted an adverse employment action. This is nothing more than a restatement of the argument that Plaintiff's loss of confidence in her ability to know when to use deadly force created an adverse employment action. For the reasons discussed above, the Court holds that this subjective impact on Plaintiff cannot rise to the level of such an adverse action.

Another argument mentioned by Plaintiff is that she was forced to speak out against the discrimination she was suffering, and consequently was seen as a troublemaker who lost the confidence of the ROP unit. There are three problems with this argument. First, Plaintiff was not "forced" to speak out; in other words, her complaints about discrimination cannot be considered an action by Defendant that could then be considered an adverse employment action. Second, the only admissible evidence[6] that Plaintiff was thought of as a troublemaker is Plaintiff's own feelings about the way she was treated by the ROP unit. Plaintiff presented no evidence from anyone who heard a specific person describe her as a troublemaker, nor did she present any evidence of negative comments by ROP members. The worst she could come up with was Montano's comment at the mall, "Well, there's Sheryl Paloni." This comment is hardly evidence of a negative attitude toward

---

[6]Brown's and Moe's recitations of hearsay comments by unidentified officers, mentioned above, are not admissible for summary judgment purposes and are therefore not helpful to Plaintiff. *Wright-Simmons v. Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir.1998) (hearsay testimony is "not suitable grist for the summary judgment mill.").

10

Plaintiff by all, or most, of the ROP members. Finally, Plaintiff presented no evidence indicating how often she would be required to work with members of the ROP unit, as opposed to the members of her squad, who were "great." Absent such evidence, the Court cannot find a significant change in employment status or circumstances.

Plaintiff's last argument is that she was constructively discharged when she retired, and this constructive discharge was the adverse employment action. A constructive discharge certainly qualifies as an adverse employment action. In this case, however, Plaintiff has not raised an issue of fact as to whether she was constructively discharged. "A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Tran v. Trustees of the State Colleges in Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004). An objective test is applied to determine whether an employee's working conditions would cause such feelings in a reasonable person; neither the employee's subjective views of the situation, nor the employer's subjective intent in taking the actions that it did, are relevant. *Id.* The question is whether the employee had any other reasonable choice but to resign in light of the employer's actions. *Id.* In other words, even accepting the proposition that Defendant's actions were taken with discriminatory motives, the Court must determine whether a reasonable police officer would have felt she had no choice but to resign simply because she had been found in violation of the deadly-force SOP and been ordered to undergo retraining on that subject. For the reasons previously stated, the Court rejects this proposition. Plaintiff did not suffer severe discipline, such as a loss of rank, pay, or benefits; she was supported by her supervisor, Moe, and the members of her squad; and the only objective change in her work conditions was that at some undetermined point she would be required to attend a retraining session. These circumstances would not compel a reasonable officer in Plaintiff's position to find the situation intolerable, and would not force that reasonable officer to resign.

11

Based on the foregoing, summary judgment will be granted on Plaintiff's Title VII claims for disparate treatment and retaliation.

**First Amendment Retaliation:** Plaintiff contends Defendant retaliated against her for exercising her First Amendment right to free speech. A two-part test applies to public employees' claims alleging such retaliation. First, the employee's speech must be fairly characterized as speech on a matter of public concern. *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). Second, a court must determine as a matter of law whether the employee's interest in speaking out, as a citizen rather than an employee, outweigh the employer's interests in promoting the efficiency of its public services. *Id.* Defendant has not addressed either of these prongs in its motion for summary judgment. Instead, Defendant raised two arguments: (1) the complaint did not name any policymaker as a defendant, or identify any custom or policy that might give rise to municipal liability; and (2) Title VII is the exclusive remedy for Plaintiff's complaints of retaliation.

Defendant's first argument is based on the fact that Plaintiff named only the City of Albuquerque Police Department as a defendant in the complaint, and did not name any individual city employee or official. Defendant correctly points out that a municipality may only be held liable if a municipal custom or policy caused the alleged constitutional deprivation, or in the alternative if an official in a policymaking position has taken the final action causing that alleged deprivation. *See Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Defendant admits, in the reply brief, that the Chief of Police would be considered a final policymaker with respect to the discipline imposed on Plaintiff. However, without citing any authority, Defendant contends that, since Plaintiff did not name the Chief as a defendant in the complaint, municipal liability cannot arise. The Court disagrees. Under *Monell*, a municipality "can be sued *directly* under § 1983..." 436 U.S. at 690 (emphasis added). "[T]here no longer exists a need to bring official-capacity actions against local government officials, because

12

local government units can be sued directly..." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Since Defendant could be sued directly for the actions of the Chief, its admitted policymaker with respect to Plaintiff's employment, the Court sees no reason why the Chief had to be named as a defendant in this case, either in his individual or official capacity. In the absence of any authority supporting that proposition, the Court declines to accept it.

Defendant's second argument is that Plaintiff's claim should be limited to a Title VII claim, because she cannot base a § 1983 constitutional claim on the same facts as her Title VII claim. This proposition, while supported by some earlier authority, has been rejected by the Tenth Circuit. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) (noting prior position of some courts, but holding that as long as a plaintiff has an independent constitutional basis for his claims, he may maintain both a Title VII claim and a § 1983 claim); *see also Adams v. City of Oklahoma City*, 1998 WL 381062, fn. 2 (10th Cir. unpublished) (since plaintiffs alleged an independent constitutional basis for their § 1983 claims apart from Title VII, Title VII does not provide the exclusive remedy). In this case, Plaintiff alleges she spoke out about discrimination against women at APD, which is a matter of public concern under the First Amendment. *See David, supra*, 101 F.3d at 1355-56.[7] She also alleges she was retaliated against as a result of that speech, in violation of that Amendment. Therefore, as in *Drake* and *Adams*, Plaintiff has alleged a separate constitutional basis for her § 1983 claim. In sum, it possible that the same act of retaliation can violate both Title VII and the First Amendment, and Plaintiff alleges that is true in this case. For that reason, Plaintiff is not limited to a Title VII action.

Since the only arguments raised by Defendant at this point are not meritorious, the Court must deny the motion for summary judgment on the First Amendment claim.

---

[7]Defendant has not claimed that Plaintiff was speaking out purely as an employee, raising her own personal grievance, rather than a citizen. It that were proven, her speech would not be protected by the First Amendment. *See David*.

**State-Law Claims:** Plaintiff has raised two state-law claims: constructive discharge and retaliatory discharge. Defendant's separate motion for summary judgment raises, in the brief in support, only one ground for dismissing these claims--Defendant argues that Plaintiff did not provide timely notice of her tort claim, as she is required to do under the New Mexico Tort Claims Act. NMSA, § 41-4-6. In response, Plaintiff argues that Defendant had actual notice of her claims. The Court need not address this somewhat complicated issue of state law. Instead, the Court holds that there was no discharge in this case, and therefore no claim for constructive or retaliatory discharge may be pursued.

As discussed above, Plaintiff was not discharged by Defendant but chose to retire. Her only possible avenue of claiming a discharge, either constructive or retaliatory,[8] is to show her retirement was not voluntary. However, New Mexico applies the same standards for constructive discharge as does the Tenth Circuit. *See Gormley v. Coca-Cola Enterprises*, 85 P.3d 252, 256-57 (N.M. App. 2003) (noting lack of New Mexico law regarding the elements of constructive discharge, and applying Tenth Circuit law). Under those Tenth Circuit standards, the Court has already held that Plaintiff has failed to raise a genuine issue of material fact as to whether she was constructively discharged. That

---

[8]The Court does not intend to suggest there is a difference between constructive discharge and retaliatory discharge in the circumstances of this case. That is an issue that need not be decided. The Court addresses the two claims separately only because that is how the parties addressed them.

holding applies to Plaintiff's state-law claims as well.[9]  Summary judgment will therefore be granted on these claims.[10]

**Motion to Strike Moe Affidavit:**  The Court has reviewed the affidavit and the portions of the Moe deposition submitted by the parties.  The Court finds most of the contents of the affidavit consistent with Moe's deposition testimony.  However, the Court has considered only those portions of the affidavit that are based on personal knowledge, do not constitute unsubstantiated hearsay, and are relevant to the issues in this case.  The motion to strike the affidavit in its entirety will therefore be denied.

**Conclusion:**  Based on the foregoing, the Court will grant summary judgment to Defendant on Plaintiff's Title VII claims and on her state-law claims.  The Court will deny summary judgment on Plaintiff's First Amendment retaliation claim.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendant's motion for summary judgment on Plaintiff's federal claims (Doc. 73) be, and hereby is, GRANTED in part and DENIED in part; that Defendant's motion for summary judgment on

---

[9]The fact that the parties did not specifically brief the merits of the state-law discharge claims does not preclude the Court from granting summary judgment on the merits, since Plaintiff had an ample opportunity to address the constructive-discharge question with respect to the federal claims. *See Hand v. Matchett*, 957 F.2d 791, 794 n. 2 (10th Cir.1992) (*sua sponte* ruling on summary judgment motion was proper when the parties had adequate opportunity to address all pertinent issues).

[10]The Court notes that in the reply brief, Defendant raised the issue of whether immunity has been waived under the Tort Claims Act for claims of constructive discharge or retaliatory discharge. That argument was not raised in Defendant's brief in chief, and Plaintiff therefore did not have an opportunity to respond to it.  The Court therefore will not address it either.  The Court does, however, caution counsel for Defendant to avoid such practices in the future.

Plaintiff's state-law claims (Doc. 69) be, and hereby is, GRANTED; and that Defendant's motion to strike the affidavit of William Moe be, and hereby is, DENIED.

Dated this 28th day of July, 2004.

BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Robert G. McCorkle
Theresa W. Parrish

**For Defendant**:
Paula I. Forney
Gregory L. Biehler